**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3721-15T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

N.H., SR.,

    Defendant-Appellant.

_____

IN THE MATTER OF N.H., JR.,

    Minor.

_____

Submitted May 24, 2017 — Decided July 17, 2017

Before Judges Fuentes and Farrington.

On appeal from the Superior Court of New
Jersey, Chancery Division, Family Part, Hudson
County, Docket No. FN-09-0368-14.

Joseph E. Krakora, Public Defender, attorney
for appellant (Kimmo Z.H. Abbasi, Designated
Counsel, on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent (Andrea M. Silkowitz,
Assistant Attorney General, of counsel; Alaina
M. Antonucci, Deputy Attorney General, on the
brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Todd S. Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant N.H., Sr. is the biological father of N.H., Jr., (Neil),[1] a child under the age of eighteen. He appeals from the order of the Family Part finding he abused and neglected Neil within the meaning of N.J.S.A. 9:6-8.21c(4)(b). After conducting a fact-finding hearing, the court concluded defendant "created or allowed to be created a substantial physical injury to [Neil] by other than accidental means and caused protracted loss or disfigurement[.]" Defendant argues the Family Part's findings were not supported by sufficient competent evidence in the record. We disagree and affirm.

On November 21, 2013, the Division of Child Protection and Permanency (Division) received a referral from a staff member at Neil's after-school program that defendant had physically assaulted his son three days earlier because the boy was wearing makeup. Neil was fifteen years old at the time. After investigating the matter, the Division filed a verified complaint and order to show cause (OTSC) on November 25, 2013, alleging that

---

[1] Pursuant to Rule 1:38-3(d)(12), we use the pseudonym "Neil" to protect the child's privacy.

on November 18, 2013, defendant had assaulted Neil by "punching him hard in his mouth with a closed fist."  The force of the blow was so severe that it left the child momentarily unconscious and knocked loose one of his front teeth.  Neil told the Division investigator[2] that his father attacked him because he was wearing makeup as an expression of his sexual orientation.  Neil also told the investigator that his father called him homophobic slurs and "use[d] to beat me a lot."

The Family Part conducted an initial evidentiary hearing during which principal investigator Roger Broyles and Division Special Response Unit (SPRU) Worker Mauricio Diaz testified. Defendant was present and represented by counsel.  After hearing from these two witnesses and considering the arguments of counsel, the judge found the Division had presented sufficient evidence to warrant the emergent removal of the child.  The judge placed Neil in the custody of the Division.

After several status conferences, the court conducted a fact-finding hearing on March 13, 2014.  Investigator Broyles and Division SPRU Worker Diaz testified for the Division.  Defendant testified in his own defense.  Broyles testified that Neil told

_____

[2] The investigator was employed by the Public Defender's Office. The Conflict of Interest Unit assigned him to serve as the Principal Investigator in this case because Neil's stepmother is employed by the Division.

him that at approximately 8:45 p.m. on November 18, 2013, his father was upset with him because he forgot to take out the trash. When defendant came into the boy's bedroom to chastise him for not doing the chore, defendant noticed that Neil had mascara and makeup on. Defendant became irate and started yelling. When Neil "made a smart remark," defendant "punched him in the face, . . . knocking [Neil] to the floor." Neil briefly lost consciousness, started "coughing up blood" and noticed one of his front teeth was loose. Neil told Broyles that his father apologized and attempted to calm him down. Based on his own observations, Broyles testified that Neil had a missing front tooth and the inside and outside of his lower lip was injured. Although his stepmother was present at the time of this incident, no one called the police.

Neil also alleged that he had suffered physical abuse at his father's hands for approximately a year and a half. He alleged defendant called him homophobic slurs, such as "fairy" and "faggot." He also alleged that defendant punched him and left bruises on several other occasions. Broyles's report states that Neil praised his stepmother for regularly standing up for him; she

attempted to stop the abuse, but was afraid to report defendant's violent acts to the Division.[3]

Broyles spoke with defendant twice that same day. According to Broyles, defendant stated that he received a call from Neil's school about his son's use of makeup. When he confronted Neil in his bedroom to chastise him, he "observed a black handle in his [son's] pocket[.]" This turned out to be the handle of a knife. Defendant told Broyles he believed his son's tooth fell out when he grabbed his son to prevent him from doing anything drastic. They then struggled and fell to the floor. When Broyles questioned Neil about the knife, he denied threatening his father with it.

Broyles testified defendant took Neil to the dentist on November 20, 2013, which coincided with a prescheduled appointment for a filling. The dentist postponed the filling and checked Neil's mouth to make sure it was not infected. According to Broyles, the dentist told Neil that the original tooth could not be reinserted and he would need an implant. Defendant did not take Neil to any other medical professional to determine if the child had sustained any neurological injuries arising from his

---

[3] Neil told Broyles that the Division's response unit came to his home in 2012. The investigator did not take any action because the "bruises" were "not that bad." Neil also told Broyles he was afraid because his stepmother works for the Division. The record shows the case under review here is the only incident of abuse and neglect that the Division has substantiated against defendant.

momentary loss of consciousness. Broyles arrived at defendant's residence during the early morning of November 22, 2013. He observed an oval-shaped abrasion on the knuckles of defendant's left hand. Defendant told Broyles he received this injury when Neil cut him with a knife during their altercation. Defendant again denied striking Neil and continued to claim the tooth became loose when Neil fell to the floor during their tussle.

Defendant gave the following testimony with respect to his son's sexual orientation.

> Q. How long have you known [Neil's] sexuality?
>
> A. Since he was in grammar school. He was in the seventh grade. I knew then.
>
> Q. Has that been a problem for you?
>
> A. No. I still loved him the same.
>
>    . . . .
>
> Q. Have you ever been concerned about [Neil] wearing make-up?
>
> A. Just through his history with the assault, and I was afraid that another assault would have took [sic] place. Like, he was raped and he was very outgoing. He wanted to . . . be, like, transsexual and I was afraid that he was already . . . hurt three times to [sic] this incident, so, of course, as a dad, I'd tell him, hey, don't go out there wearing that. [Neil] did never [sic] want to listen.
>
> Q. So your concern was mainly . . . for his protection?

A. Yes. Yes, sir. Definitely.

Q. On November 18th, [2013], . . . you . . . got into a fight because of his sexuality?

A. No. That had nothing to do with it.

On cross-examination, defendant denied admitting to Broyles that he struck his son on November 18, 2013. Defendant denied that a staff member from his son's school had called about his son wearing make-up. He denied calling the school to report that Neil would not attend on November 19 and 20, 2013. Defendant also denied that the injury to his left hand had anything to do with striking his son in the face. Defendant is left-hand dominant.

The Family Part Judge who presided over the fact-finding hearing did not find defendant's testimony credible. The judge expressly rejected defendant's characterization of his son's demeanor as violent and aggressive. Conversely, the judge accepted the testimony of the Division's witnesses who described the child as looking "like a beaten puppy, upset, afraid to go home, meek[,]" and as if he was in fear. The judge found the Division had proven by a preponderance of the evidence that defendant physically abused his fifteen-year-old son on November 18, 2013.

As a condition of regaining custody, the court ordered defendant to complete anger management counseling and submit to a psychological evaluation. Defendant did not comply. On June 1,

2014, defendant requested the Family Part terminate his parental rights to Neil. The court denied defendant's request. The question is now moot because Neil has reached the age of majority.

We are bound to uphold the factual findings of the Family Part if they are "supported by 'adequate substantial and credible evidence' [i]n the record." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). The Supreme Court has also recognized that we owe an enhanced deference to the Family Part when the factual findings are "largely testimonial" and involve "questions of credibility." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

New Jersey law defines an "[a]bused or neglected child" as:

> a child less than [eighteen] years of age . . . whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]
>
> [N.J.S.A. 9:6-8.21c(4) (emphasis added).]

The Family Part found defendant struck his fifteen-year-old son in the face with a closed fist with such force that it caused the child to lose consciousness temporarily. When the child awoke, his lower lip bled and one of his front teeth had come loose. This is precisely the type of violence that this court has identified as "excessive corporal punishment" under N.J.S.A. 9:6-8.21c(4). N.J. Div. of Youth & Family Servs. v. K.A., 413 N.J. Super. 504, 512 (App. Div.), certif. granted, 204 N.J. 40 (2010), certif. dismissed, 208 N.J. 355 (2011).

As we explained in K.A.:

> [A] single incident of violence against a child may be sufficient to constitute excessive corporal punishment. A situation where the child suffers a fracture of a limb, or a serious laceration, or any other event where medical intervention proves to be necessary, may be sufficient to sustain a finding of excessive corporal punishment, provided that the parent or caregiver could have foreseen, under all of the attendant circumstances, that such harm could result from the punishment inflicted.
>
> [Id. at 511.]

Here, the Family Part found that when Neil returned home, defendant confronted him about wearing makeup. The confrontation quickly escalated into a physical assault when defendant punched Neil in the mouth. The record includes photographs depicting Neil's missing tooth and his lacerated lower lip. The photographs

also depict defendant's left hand with an oval-shaped abrasion on the knuckles. Finally, because the Family Part Judge rejected defendant's testimony as not credible, we conclude the violence defendant inflicted on his son was motivated, in large part, by defendant's odious homophobic repudiation of his son's sexual orientation. This makes defendant's actions particularly reprehensible.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3721-15T2